MARINO, TORTORELLA & BOYLE, P.C.

ATTORNEYS AT LAW

KEVIN H. MARINO
JOHN D. TORTORELLA
JOHN A. BOYLE

EREZ J. DAVY*
MICHAEL J. FLYNN

437 SOUTHERN BOULEVARD
CHATHAM, NEW JERSEY 07928-1488
TELEPHONE (973) 824-9300
FAX (973) 824-8425
www.khmarino.com

875 THIRD AVENUE, 21ST FLOOR
NEW YORK, NEW YORK 10022
TELEPHONE (212) 864-7200
e-mail: kmarino@khmarino.com
*OF COUNSEL

August 20, 2026

**VIA ECF**

Honorable Esther Salas, U.S.D.J.
Honorable Michael A. Hammer, U.S.M.J.
United States District Court
District of New Jersey
Martin Luther King Building & U.S. Courthouse
50 Walnut Street
Newark, NJ 07101

Re: *In re E*TRADE Cash Sweep Litigation*, No. 24-CV-0603 (ES)(MAH)

Dear Judge Salas and Judge Hammer:

We represent defendants E*TRADE Securities LLC ("**E*TRADE**"), Morgan Stanley, and Morgan Stanley Smith Barney LLC ("**MSSB**," and collectively, "**Defendants**") and write in response to the Court's July 24, 2026 order in the above-captioned action (the "**July 24 Order**") (ECF 105). Although the parties will submit a joint status report on September 17, 2026, as the Court directed, we write now to raise an issue that the Court may wish to address first.

As the Court is aware, this case concerns claims by E*TRADE customers that they were paid insufficient interest on uninvested cash that would otherwise have remained idle in their investment accounts but was instead, through what is known as a "cash sweep program," swept into bank deposit accounts where it received FDIC protection, earned interest, and customers had the benefits and flexibility of complete liquidity. Plaintiffs allege that the interest paid on the swept cash was too low, while Defendants contend, among other things, that the interest was consistent with the terms of the parties' contracts and Defendants' disclosures.

Plaintiffs filed their Consolidated Amended Complaint ("**CAC**") on July 16, 2026. The July 24 Order directed the parties to confer on several items and expressed the expectation that Defendants would be prepared to respond to the CAC around the time of the upcoming September 24, 2026 conference before Judge Hammer. Defendants are, of course, glad to proceed on the Court's preferred timeline. Before briefing Defendants' motion to dismiss, however, there is a threshold issue that Defendants believe should be addressed concerning the scope of this case relative to the case concerning *MSSB's* cash sweep program pending in the Southern District of New York, *Estate of Bernard J. Sherlip et al. v. Morgan Stanley, et al.*, No. 24-CV-4571 (S.D.N.Y.) ("*Sherlip*"). Based on our discussions with counsel in this case and the *Sherlip* case, it has become clear that counsel in both cases intend to pursue certain duplicative claims. Defendants respectfully submit that this issue should be addressed before the motion to dismiss is filed because it will significantly impact the scope and complexity of that motion. In particular, resolving the

issue will determine whether Defendants must address their motion just to E*TRADE's cash sweep program or to *both* the E*TRADE program *and* the separate MSSB program, which is currently being litigated in the SDNY and which has its own contracts, disclosures, processes, and operative facts.

In our August 13, 2025 letter to the Court, we drew the Court's attention to the possibility that—depending on the contents of the CAC after lead counsel was appointed—there may be claims asserted here that are duplicative of claims already being litigated in the SDNY, raising the prospect of inconsistent rulings and duplication of effort, among other problems. (*See* ECF 73.) In particular, while E*TRADE and MSSB were previously independent companies with separate cash sweep programs, following E*TRADE's merger with Morgan Stanley, all customers of E*TRADE's cash sweep program were later transferred to MSSB's program in 2023, and E*TRADE no longer had its own cash sweep program. Insofar as E*TRADE customers became part of *MSSB*'s cash sweep program starting in 2023, those same customers are *already* bringing putative class claims in the SDNY alleging that the interest they received from MSSB's program for the post-2023 period was too low. (*See id.*) Accordingly, Defendants' August 13, 2025 letter stated that, following appointment of lead counsel and the filing of the CAC, "if that consolidated complaint purports to include claims directed at the MSSB program that are already being litigated in the Southern District of New York, Defendants will move to stay or dismiss the MSSB-related claims in light of the pending New York litigation. Although Defendants are prepared to make such arguments in connection with their broader motion to dismiss, they will also be prepared to file an earlier motion on this issue (either at the time of the consolidation and lead plaintiff motions, or otherwise), if [the Court] would prefer to address the issue sooner." (*Id.*) During a conference on October 16, 2025, Judge Hammer stated that the order of operations would be: "decide consolidation and the interim class counsel issue; fix the pleadings so we know the operative pleading; and then deal with what happens with the MSSB claims." (ECF 84 at 7:15-18.) Judge Hammer further stated that "the only way to really responsibly address all of those things is through motion practice." (*Id.* at 7:20-21.)

Now that the CAC has been filed, it is clear that Plaintiffs purport to bring claims on behalf of E*TRADE customers for the period post-2023 when those claims would be based on the contracts, disclosures, processes, and operative facts relating to the *MSSB* program. (*See* CAC ¶ 146 (defining putative class as all E*TRADE customers who had cash deposits in the E*TRADE or MSSB cash sweep programs from February 1, 2018 through the present).) The putative class definition in *Sherlip also* purports, on its face, to include claims relating to MSSB's cash sweep program for the *same* post-2023 time period on behalf of the *same* customers.[1] Accordingly, once

[1] *See Sherlip* Second Amended Consolidated Complaint ¶ 165, ECF 86 (defining the putative class as "Clients of Morgan Stanley who had cash deposits or balances in Morgan Stanley's ank Deposit Program at any time from October 17, 2018, through the end of the conduct alleged herein").

the CAC was filed, Defendants reached out to interim class counsel in *Sherlip* to confirm whether they were, in fact, also purporting to bring post-2023 claims on behalf of E*TRADE customers for the period during which their cash sweep accounts were transferred to MSSB. Plaintiffs' counsel in *Sherlip* have now provided such confirmation. (*See* Ex. A.)

Defendants are therefore now exposed to the prospect of having to litigate overlapping post-2023 claims about the MSSB cash sweep program in two different courts, putatively on behalf of the very same customers. This is untenable and inappropriate. As one of Plaintiffs' counsel in the instant action previously argued, at a time when they were seeking to transfer these actions to the SDNY, "to permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money." (ECF 48 at 14 (quoting *Ferens v. John Deere Co.*, 494 U.S. 516, 531 (1990)).) Plaintiffs' counsel further pointed out the even more problematic consequences of overlapping claims on behalf of the same customers proceeding in two different courts at the same time—namely, the risk of inconsistent decisions and of a "race to the finish" whereby a judgment or settlement in one case could have preclusive effects on the other. (*See* ECF 48 at 15; ECF 53 at 2.)

Defendants respectfully submit that the question of whether the MSSB-related claims should be dismissed or stayed in favor of the *Sherlip* litigation (where a motion to dismiss those claims has been fully briefed since November 13, 2025) should be decided first, before Defendants move to dismiss whatever claims remain. Otherwise, it will be necessary for Defendants' motion to dismiss to address *both* the E*TRADE program *and* the MSSB program, which had different contract terms and disclosures. That will substantially increase the scope and complexity of the motion, which may be unnecessary if the Court were to conclude that the MSSB-related claims should be stayed or dismissed to avoid the problem of overlapping claims being litigated in two different courts on behalf of the same customers.

Defendants are prepared to brief their motion to dismiss or stay these overlapping claims in advance of the September 24 conference before Judge Hammer if that would be the Court's preference, or else will be prepared to discuss the issue further at the September 24 conference. Defendants would also be prepared to brief their motion to dismiss on whatever claims remain within 30 days of the Court's decision on the overlapping claims, or whatever timeframe the Court deems appropriate.

We have discussed this issue with Plaintiffs' counsel, consistent with the July 24 Order. Plaintiffs oppose a process whereby this issue relating to the overlapping MSSB-related claims would be addressed first, before the broader motion to dismiss all claims relating to *both* the E*TRADE *and* the MSSB cash sweep programs is filed. Plaintiffs' counsel takes issue with the position of interim class counsel in *Sherlip* that their claims relating to the MSSB program include claims of E*TRADE customers whose sweep accounts became part of the MSSB program beginning in 2023, but that is clearly the position the *Sherlip* plaintiffs are taking, and neither Defendants nor the courts should be caught in the middle and forced to litigate and adjudicate overlapping claims in two different jurisdictions. Plaintiffs have also suggested that the *Sherlip*

court "already decided this issue" when it transferred the *McKinney* case to this Court, but that is not so. Judge Caproni merely decided that *McKinney*, brought on behalf of E*TRADE accountholders, should not be litigated in a separate jurisdiction from where other claims on behalf of E*TRADE accountholders (*Burmin* and *Simmons*) were already being litigated. *McKinney v. Morgan Stanley*, 2025 WL 2089369, at *7 (S.D.N.Y. July 25, 2025). Just as claims relating to E*TRADE's cash sweep program are now all being litigated in one court in New Jersey—E*TRADE's principal place of business—the claims relating to MSSB's cash sweep program should all be litigated in one court in New York—MSSB's principal place of business.[2] (*See* ECF 48 at 13 (one of Plaintiffs' current counsel explaining why SDNY is the more appropriate forum, in part because MSSB is headquartered in New York and the relevant contracts are governed by New York law).)

Defendants will continue to confer with Plaintiffs concerning the other items identified in the July 24 Order and, as required by that order, inform the Court of the parties' positions by joint letter on September 17, 2026. In the event the Court would like Defendants to brief the "duplication" issue in advance of the September 24 conference, or would like to discuss this issue with the parties in advance of that conference, Defendants remain at the Court's disposal.

We thank the Court for its attention to this matter.

Respectfully submitted,

Kevin H. Marino

cc: All counsel of record

---

[2] In previous correspondence, Plaintiffs have quoted a statement by Defendants that transferring *Burmin* to New York "makes no logical sense" and have argued that this is inconsistent with Defendants' present position. Not so. When the *McKinney* plaintiffs sought to consolidate *McKinney* with *Sherlip*, Defendants opposed this because *Sherlip* relates only to the MSSB program, not to the E*TRADE program. In that context, the *McKinney* plaintiffs' argument that *Burmin*, too, could be consolidated with *Sherlip* "ma[de] no logical sense" as a basis for consolidating *McKinney* into *Sherlip*. (*See* Joint Ltr., *Sherlip*, ECF 54 at 4.)

During our meet-and-confer with Plaintiffs' counsel, they also asked why Defendants had not filed a motion earlier relating to the overlapping MSSB-related claims. But Defendants notified the Court of this issue in August 2025, prior to the selection of lead counsel and the filing of the CAC. And at the time Defendants filed their motion to dismiss in *Burmin*, the *Sherlip* case had not yet been filed, so the "overlap" issue did not yet exist.